HARWOOD v. WILLIAMS.

1. LANDLORD AND TENANT—LEASE—CONSTRUCTION.

Immediately after leasing premises for a year, the landlord wrote the tenant that he might have the farm for three years, subject to the reserved right to sell any part, to which the tenant should relinquish all claim at the end of the current year in which the sale should be made; *held*, that the tenant had a lease in writing for the three years, terminable as to the part sold at the end of any year by a sale of the whole or part of the premises.

2. SAME—EMBLEMENTS—TERMINATION OF LEASE.

The right of a tenant, whose lease the landlord terminates by a sale of the leased property before the expiration of the term, to harvest the growing crops is enforceable against the landlord or his grantee.

3. SAME—GROWING CROPS—STRAW.

The tenant is entitled to straw grown upon the land and unharvested at the termination of his rights, as well as to the grain itself.

Cross-appeals from Cass; Des Voignes, J. Submitted April 11, 1910. (Docket No. 50.) Decided May 7, 1910.

Bill by Guy M. Harwood against Orlo J. Williams to enjoin the cutting and removal of certain grain grown on leased premises. Defendant filed an answer in the nature of a cross-bill to establish his ownership to said grain. From the decree rendered, both parties appeal. Modified.

*R. R. Pealer* and *G. E. Miller*, for complainant.

*Walter C. Jones*, for defendant.

One Charles Wetherbee, being the owner of a farm of 385 acres in Cass county, leased the same to defendant on February 19, 1907. The lease contains the following, among other provisions:

"Term: April 1st, 1907, to April 1st, 1908. Rent $650.00, payable $200 Mar. 1st, 1907, and $450 Jan. 1st. 1908. And the said party of the second part further covenants, with the said party of the first part, that at the expiration of the time mentioned in this lease, to give peaceable possession of the said premises to said party of the first part," etc.

On February 24, 1907, Wetherbee wrote defendant as follows:

"*Dear Sir:* Your letter at hand, and would say you may have the farm for three years on condition that I reserve the right to sell all or any part during that time, and you agreeing to relinquish, or give up, all claim on the part sold at the end of the current year, during which the sale is made. You may take this letter to C. S. Jones of Marcellus, and have above written in the lease, or simply pin this letter to your copy of the lease and preserve it, just as you wish."

At the time defendant went into possession there was growing on the farm fall wheat, which was harvested during the summer of 1907 by the out-going tenant. During the fall of 1907 defendant sowed 45 acres of wheat and 28 acres of rye. On November 1, 1907, Wetherbee entered into a contract with complainant to sell 131 acres of the land included in defendant's lease, and upon the land so contracted was located all the wheat and rye sown by defendant. This contract was followed by the payment of the consideration $4,800 and the delivery of a deed about December 1, 1907. The deed contained a warranty against all incumbrances—

"Except a lease to Orlo J. Williams, and that they will, and their heirs, executors, and administrators shall, warrant and defend the same against all lawful claims, whatsoever, except as to the rights of the said Orlo J. Williams, who is now a tenant on said land and whose term of tenance expires April 1st, 1908."

On December 24, 1907, complainant served a notice to quit on defendant, and defendant did vacate said 131 acres purchased by complainant about April 1, 1908, but

at all times claimed the right to return and enter upon said premises for the purpose of removing the crops. In July, 1908, while defendant was in the act of harvesting the wheat and rye, complainant filed his bill of complaint herein, praying that defendant be declared a trespasser, and be enjoined from cutting or removing the grain. Defendant filed an answer and cross-bill, praying to be declared the owner of the wheat and rye, including the straw, with full right to harvest and remove the same under his lease. The grain was threshed and sold under an order of the court, and a decree entered, giving to the complainant from the value thereof the sum of $256 and all the straw, and to the defendant the balance, being the sum of $559.91. Each party to pay certain specified disbursements, but no costs to be paid by either party to the other. From this decree both parties appeal.

BROOKE, J. (*after stating the facts*). The first thing to be determined is the nature and duration of the tenure of defendant. There can be no doubt, when the letter of February 24, 1907, is considered, that defendant had a written lease of the entire farm for a period of three years, which could be defeated, at any time within that period, by the sale of the whole or a part thereof, in which event the lease, as to the portion sold, would terminate with the end of the current year. The lease being silent as to the right of the lessee to harvest grain sown before, but ripening after, the termination of the term, by sale, we will look to the situation of the parties and the other provisions of the contract. In the first place, it is to be noted that when defendant entered into possession on April 1, 1907, there was grain growing, which was later harvested by the tenant who preceded him. Again, the rent reserved is a substantial amount. We do not believe it was contemplated by either Wetherbee or defendant, when the contract was entered into, that defendant should sow no fall grains, or, if he did so, be at the peril of their absolute loss in case of sale. Indeed, Wetherbee fully

recognized defendant's rights in the premises, for, before entering into the contract with complainant, he endeavored to purchase the crop from defendant for the sum of $250. Failing in this, he offered to reduce the selling price to complainant from $5,000 to $4,800, which proposition was accepted by complainant, and the reservation as to defendant's rights under his lease was put in the deed. The record shows that all the wheat and most of the rye was sown before defendant had any notice of the negotiation for the sale, and that all was sown before the consideration was paid and the deed delivered. It further shows conclusively that complainant knew, at the time he purchased, that defendant had sown the grain and claimed the right to harvest it, and that he made no claim to the wheat or rye until months after his purchase. There is evidence tending to show, and we believe the weight of the evidence indicates, that it was fully understood between Wetherbee and complainant that defendant should be permitted to reap his crop in peace in consideration of the reduction in price to complainant.

But neither complainant's knowledge of defendant's claims nor his acquiescence therein is controlling of the issue here, although they dispose of complainant's demand for equitable relief. The defendant had a clear legal right, being a tenant for an uncertain term, to harvest such crops, in the nature of emblements, as were growing, but unripe at the time of the termination of his tenancy by the act of his landlord. This right is one which he may maintain, not alone against his landlord, but against the subsequent tenant or grantee of his landlord. 2 Underhill on Landlord and Tenant, p. 1306, and cases cited; 24 Cyc. p. 1070, and cases cited.

Defendant lays claim to the straw, about 30 tons, and, inasmuch as the lease is silent upon the question, we can see no reason for holding that the straw is not as much a part of the crop as the grain itself. Had defendant continued in possession, we think he would have had a clear right (in the absence of restriction in the lease) to sell and

remove the straw from the premises, and we are unable to see how that right has been lost through the termination of his tenancy by the landlord. *Craig* v. *Dale*, 1 Watts & S. (Pa.) 509 (37 Am. Dec. 477); *Fobes* v. *Shattuck*, 22 Barb. (N. Y.) 568; *Rank* v. *Rank*, 5 Pa. 211.

It follows, therefore, that the decree of the court below must be modified in the following respects: The defendant will be paid the entire sum realized from the sale of the grain and now on deposit with the register of the court. The decree will further provide for the payment by the complainant to the defendant of the sum of $30, that being the value of the straw in the stack at $1 per ton.

The defendant will recover costs of both courts.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.